UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BEN DAVIS PIZANO,

        Petitioner,

                                     CASE NO. 05-CV-70372-DT
   v.                               JUDGE LAWRENCE P. ZATKOFF
                                     MAGISTRATE JUDGE PAUL J. KOMIVES

BARRY D. DAVIS,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *The State Court Proceedings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
     E.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
               a. Hearsay Statements of Magdalena Ortiz . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
               b. Hearsay Statements of Jack Pizano . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

\*      \*      \*      \*      \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus.

II.    REPORT:

A.    *Procedural History*

        1.     Petitioner Ben Davis Pizano is a state prisoner, currently confined at the Newberry

Correctional Facility in Newberry, Michigan.

2.      On December 21, 2000, petitioner was convicted of three counts of first degree felony murder, MICH. COMP. LAWS § 750.316, following a jury trial in the Jackson County Circuit Court. On January 10, 2001, he was sentenced to three concurrent, mandatory terms of life imprisonment without possibility of parole.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT REVERSIBLY ERRED IN ADMITTING, OVER DEFENSE OBJECTION, TESTIMONY CONCERNING ALLEGED THREATS UTTERED BY JACK PIZANO AND STATEMENTS ALLEGEDLY MADE BY MRS. ORTIZ CONCERNING THOSE THREATS, AS THAT EVIDENCE WAS HEARSAY IN REGARDS TO THE CHARGES AGAINST BEN PIZANO, AND THE ADMISSION OF THE TESTIMONY VIOLATED DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONTATION.

II.     THE TRIAL COURT REVERSIBLY ERRED IN FAILING, REGARDLESS OF THE DEFENSE REQUEST, TO INSTRUCT THE JURY ON THE NECESSARILY INCLUDED OFFENSE OF SECOND DEGREE MURDER.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Pizano*, No. 232168, 2003 WL 193537 (Mich. Ct. App. Jan. 28, 2003) (per curiam).

4.      Petitioner, through counsel, sought leave to appeal these two issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Pizano*, 469 Mich. 974, 671 N.W.2d 885 (2003).

5.      Petitioner, through counsel, filed the instant application for a writ of habeas corpus on February 1, 2005. As grounds for the writ of habeas corpus, he raises the confrontation claim that he raised in the state courts.

6.      Respondent filed his answer on August 1, 2005. He contends that petitioner's claim

2

is (1) barred by petitioner's procedural default; (2) forfeited by petitioner's wrongdoing; and (3) without merit.

B.    *The State Court Proceedings*

Petitioner was charged with three counts of first degree felony murder in connection with the deaths of Emilio and Magdalena Ortiz, and their granddaughter, Sandra Ortiz. The deaths resulted from a fire at the Ortiz' house during the early morning hours of July 30, 1999. The prosecution alleged that the fire was set by petitioner's brother, Jack Pizano, and that petitioner assisted him. As explained in petitioner's brief:

> Magdalena was the paternal grandmother of seven children born between her son from a previous marriage, Trinidad Ramon, and Diana Pizano, who later married Jack Pizano following her divorce from Mr. Ramon. Diana Pizano had custody of those children, including Benny Ramon. The state's theory in the case was that Jack Pizano, angry at Magdalena Ortiz for allegedly interfering in Diana Pizano's raising of these children, intentionally set fire to the Ortiz house by use of an incendiary device, and that Petitioner aided and abetted his brother in the arson. The defense theory was that Petitioner was not involved in the offenses.

Br. in Supp. of Pet., at 3. Petitioner and his brother were tried in a joint trial before separate juries.

As relevant to petitioner's habeas claim, the prosecution introduced several hearsay statements derived from an argument involving Magdalena Ortiz, Diana Pizano, and Jack Pizano the day before the fire. Specifically, the prosecution filed pre-trial motions in limine seeking to introduce hearsay statements through four witnesses: Robert Parker, Mary Jane Ortiz, Sandra Conner, and Amy Nelson. More specifically, as explained by the trial court:

> Statements that the prosecution wishes to have admitted as to Magdalena Ortiz, as to the fire and death which occurred on July 30, 1999, are summarized as follows:
> 1.    She told Mr. Parker on July 28 that she was going to Meijer's to pick up Benny Ramone [sic], her grandson;
> 2.    That after arriving at Benny's home, Magdalena had an argument with Diana Pizano, wife of Jack, and which was participated in by

3

Jack Pizano.  Statements were made at that time by Magdalena Ortiz as to taking custody of the Pizano children;

3. When Magdalena Ortiz returns home after dropping off Benny, she describes to Mr. Parker what had occurred and repeated her intention to secure custody of the Pizano children;

4. That between Wednesday afternoon and the fire at 4 a.m. on the 30th, Magdalena Ortiz repeats to three other persons the essence of the confrontation and that, if something occurred to her, Jack Pizazo [sic] would be responsible.[1]

Statements that the Prosecutor contends should be admissible by Emelio Ortiz and Jack Pizano are:

1. That Mr. Parker was present on the evening of July 28 when an argument ensued between Emilio Ortiz and a Hispanic male regarding the question as to the custody of the children;

2. That as the Hispanic male left, a threat was made to Emelio Ortiz;

3. That after the Hispanic male left, he was identified by Emelio Ortiz as having been Jack Pizano.

Br. in Supp. of Pet., App. F, at 1-2 (trial court's opinion and order).  The prosecution also sought to introduce against petitioner statements made by Jack Pizano.  The court, in separate rulings, permitted the prosecution to introduce both sets of hearsay evidence.

The trial court issued one opinion and order addressing the four hearsay statements made by Magdalena Ortiz and the three statements made by Emilio Ortiz and Jack Pizano identified above. With respect to Mrs. Ortiz's statements, the trial court found that the statements were primarily admissible as excited utterances.  *See* MICH. R. EVID. 803(2).  The trial court also relied in part on the present sense impression exception to the hearsay rule, *see* MICH. R. EVID. 803(3), as well as the catch-all exception, *see* MICH. R. EVID. 803(24).  *See* Br. in Supp. of Pet, App. F, at 10-11.  With respect to the statements relating to the later confrontation between Mr. Ortiz and Jack Pizano, the trial court held that Jack Pizano's statements were admissible against him as a statement of a party

---

[1]Those three witnesses were Mary Jane Ramon (Mrs. Ortiz's daughter), Sandra Conner (Mrs. Ortiz's granddaughter), and Amy Nelson (Diana Pizano's daughter and Jack Pizano's stepdaughter).

opponent under MICH. R. EVID. 801(d)(2)(A), and that Mr. Ortiz's statement identifying Jack Pizano was admissible both as an excited utterance and under the catch-all exception. *See* Br. in Supp. of Pet., Ex. F, at 11. However, the court explicitly stated that "[i]n terms of whether this evidence would be admissible in the case of Ben Pizano will be covered in the Opinion and Order as to the additional witnesses being offered by the Prosecutor against Ben." *Id*. at 11-12.

In its second opinion and order, the trial court explicitly addressed the admissibility against petitioner of Jack Pizano's threat to Mr. Ortiz and his statements to a fellow inmate in the jail. With respect to Jack Pizano's threat to Mr. Ortiz, the court ruled that this statement "is not admissible as to Ben. It did not refer to Ben being part of the threat. If in any way it could be determined to be admissible, its prejudicial value would far outweigh its probative value as to Ben." Br. in Supp. of Pet., Ex. G, at 4 (trial court opinion and order). The court also concluded that Jack Pizano's statements to a fellow inmate bore no indicia of reliability and thus were not admissible against either petitioner or Jack Pizano. *See id*.

The extensive trial testimony is accurately summarized in petitioner's brief in support of his habeas application. With respect to the hearsay statements in particular, petitioner summarizes:

> At the trial testimony regarding the alleged threats by Jack Pizano against Magdalena Ortiz on the 28th, and her subsequent statements of a fear of Jack, was given, before both juries, by three witnesses: Mary Jane Ramon, Magdalena Ortiz' daughter; Sandra Conner, Ms. Ramon's daughter; and Amy Nelson, the daughter of Diana Pizano and Trinidad Ramon. (T, 12/13, 61-62, 81-82, 95-96). Each related that on either the 28th or 29th, Magdalena Ortiz related the substance of the verbal exchange at the Pizano house, claiming Jack Pizano threatened her with physical harm if she did not stop interfering with Diana Pizano's raising of the children and held several bricks in a threatening fashion, and stated that if anything happened to her "Jack did it." The testimony also shows Magdalena Ortiz falsely told Amy Nelson she had called the police to report this incident, knowing that Amy would likely tell her mother that information. Ms. Nelson did tell Diana Pizano, sometime on the 29th, that Magdalena Ortiz told her she had called the police. (T, 12/13, 96). None of these witnesses were personally present at the Pizano house on the 28th, nor

witnessed the confrontation. Mrs. Ramon and Ms. Conner each testified that Magdalena Ortiz made no mention of Ben Pizano being present at that incident, no mention that Jack mentioned Ben as part of the threats, nor ever expressed any fear of Ben Pizano or belief that Ben would also be to blame if anything happened to her. (T, 12/13, 69-70, 84).

Br. in Supp. of Pet., at 4-5.

Following his conviction, petitioner appealed to the Michigan Court of Appeals, claiming that the hearsay evidence was improperly admitted under state law and that the admission of the statements violated his right to confront the witnesses against him. The court of appeals first determined that petitioner had waived his confrontation claim by failing to object to the hearsay evidence on that basis. *See Pizano*, 2003 WL 193537, at *1, slip op. at 1. The court then determined that Magdalena Ortiz's statements were properly admitted under the excited utterance exception to the hearsay rule, MICH. R. EVID. 803(2). *See id*. at *1-*2, slip op. at 2. Finally, the court determined that petitioner's confrontation claim, although unpreserved, also failed on the merits. Applying the test from *Roberts v. Ohio*, 448 U.S. 56 (1980), the court of appeals concluded that the admission of the hearsay statements did not violate petitioner's confrontation rights because the statements were admitted pursuant to a "firmly rooted" hearsay exception, and thus bore sufficient "indicia of reliability" to be admissible. *See Pizano*, 2003 WL 193537, at *3, slip op. at 3.

C.    *Procedural Default*

Respondent first contends that petitioner's Confrontation Clause claim is barred by petitioner's procedural default in the state courts. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate

6

2:05-cv-70372-LPZ-PJK   Doc # 27   Filed 12/01/05   Pg 7 of 20   Pg ID 2600

to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim."  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Here, there is a difficult question as to whether petitioner's confrontation claim is defaulted. Petitioner argues that, although counsel did not fully articulate the Sixth Amendment rationale in objecting to the hearsay evidence, this was because the trial judge, who fully understood the basis for the objection, cut off counsel.  Petitioner also points to an in-chambers conference where the parties and the court agreed on the necessity for separate juries under *Bruton v. United States*, 391 U.S. 123 (1968), clearly bringing forth the Sixth Amendment ground as to at least some of the statements at issue.  There is no transcript of this in-chambers conference.  This is not to say that petitioner's claim may not, in fact, be procedurally defaulted.  It is to say, however, that the resolution of this issue is unclear as a factual matter.  While the procedural default doctrine precludes habeas relief on a defaulted claim, the procedural default doctrine is not jurisdictional. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  Thus, while the procedural default issue should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims]

7

if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also*, *Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997) (noting that procedural default issue should ordinarily be resolved first, but denying habeas relief on a different basis because resolution of the default issue would require remand and further judicial proceedings); *Walter v. Maass*, 45 F.3d 1355, 1360 n.6 (9th Cir. 1995).  In light of the factual uncertainties regarding this procedural default issue, and in light of the fact that the claim is meritless in any event, the Court should proceed directly to the merits, without first resolving the procedural default issue.

D.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Analysis*

      1.      *Clearly Established Law*

The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The Confrontation Clause is applicable to the states through the Fourteenth Amendment's Due Process Clause. *See Pointer v. Texas*, 480 U.S. 400, 406 (1965). At the time of petitioner's trial and direct appeal, the standard governing the admissibility of hearsay statements under the Confrontation Clause was that set forth in *Ohio v. Roberts*, 448 U.S. 56 (1980).[2] In *Roberts*, the Court explained

---

[2]in *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court abrogated *Roberts* as applied to testimonial hearsay statements. After surveying the historical development of the Confrontation Clause and the jurisprudence interpreting it, the Supreme Court concluded that, under a proper understanding of the Clause, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 541 U.S. at 59. The Court then explained that *Roberts*'s allowance of testimonial statements based on their reliability, where there has been no opportunity

that the underlying purpose of the Confrontation Clause is similar to that of the hearsay rule, *i.e.*,

to exclude unreliable, out-of-court statements in criminal proceedings.  Thus, the Court reasoned:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability."  Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception.  In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

*Roberts*, 448 U.S. at 66.

---

for cross-examination of the declarant, departed from this proper understanding of the Confrontation Clause.  *See id*. at 60-68.  The Court therefore abrogated *Roberts* as applied to testimonial hearsay statements, concluding that "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."  *Id*. at 68-69.

The Supreme Court's decision in *Crawford* does not affect the resolution of petitioner's Confrontation Clause claim, however, for two reasons.  First, *Crawford* was not the rule of law applicable at the time of petitioner's trial and direct appeal; *Roberts* was.  Under § 2254(d)(1), habeas relief is available only if the state court's decision was contrary to, or an unreasonable application of, "clearly established federal law as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  As the Supreme Court has explained, "clearly established law" under § 2254(d)(1) "is the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision*."  *Lockyer*, 538 U.S. at 72.  Because petitioner's trial and direct appeal pre-date the Supreme Court's decision, *Crawford* does not constitute "clearly established law" upon which habeas relief for petitioner may be predicated.  *See Brown v. Uphoff*, 381 F.3d 1219, 1224 n.4 (10th Cir. 2004); *Lies v. Jackson*, 100 Fed. Appx. 378, 379 (6th Cir. 2004).  *But see Bockting v. Bayer*, 399 F.3d 1010, 1021 (9th Cir. 2005).

Second, even assuming that *Crawford* could be relied upon as clearly established law, the decision in *Crawford* does not alter the result here.  As explained above, *Crawford* abrogated *Roberts* only with respect to "testimonial" hearsay statements.  The Court explicitly left untouched the application of *Roberts* to cases involving nontestimonial hearsay: "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law–as does *Roberts*, and as would an approach that exempted all such statements from Confrontation Clause scrutiny altogether."  *Crawford*, 541 U.S. at 68.  Although the Court in *Crawford* left "for another day any effort to spell out a comprehensive definition of 'testimonial.'"  *id*. at 68, the statements at issue here do not fall within any of the formulations of "testimonial" explicated in *Crawford*, *see id*. at 51-52, as petitioner rightly acknowledges, *see* Br. in Supp. of Pet., at 35 n.6.

In order to be admissible, therefore, the hearsay testimony introduced at petitioner's trial must satisfy two criteria: (1) the declarant must have been unavailable at trial; and (2) the testimony must bear adequate indicia of reliability. As the Court explained in *Roberts*, reliability is inferred if the evidence was admitted pursuant to a firmly rooted hearsay exception. The theory behind this presumption is that these firmly rooted exceptions represent judgments, based on history and practice, that statements made in certain circumstances are inherently trustworthy such that the "adversarial testing [embodied in the Confrontation Clause] would add little to [their] reliability." *Idaho v. Wright*, 497 U.S. 805, 821 (1990). Thus, a hearsay exception is "firmly rooted" if it "rest[s] upon such solid foundations that admission of virtually any evidence within [the exception] comports with the substance of constitutional protection." *Roberts*, 448 U.S. at 66 (internal quotation omitted).

2.      *Analysis*

a. *Hearsay Statements of Magdalena Ortiz*

Here, the Michigan Court of Appeals determined that the hearsay statements of Magdalena Ortiz were admissible as excited utterances under Rule 803(2). *See Pizano*, 2003 WL 193537, at *2, slip op. at 2. The court further determined that the excited utterance exception is a "firmly rooted" exception, and thus that admission of the statements did not violate the Sixth Amendment under the *Roberts* test. *See id*. at *3, slip op. at 3. The Court should conclude that this determination was reasonable.

There is no question that Magdalena Ortiz, having died in the fire, was unavailable as a witness. *See Moore v. Reynolds*, 153 F.3d 1086, 1107 (10th Cir. 1998). Thus, the only question is whether Magdalena Ortiz's hearsay statements, as testified to by several witnesses, bore adequate

indicia of reliability to be admissible under the second prong of the *Roberts* test. With respect to Magdalena Ortiz's statements which do not reflect statements of Jack Pizano, petitioner does not here raise any argument that the statements were not properly admitted under the excited utterance exception. The Michigan Court of Appeals analyzed the statements, concluding that they were made under the excitement caused by a startling event–the argument between Magdalena Ortiz, Diana Pizano, and Ben Pizano–as required for admission under the excited utterance exception. Petitioner has offered nothing to show that this determination was unreasonable. Further, it is well established that the excited utterance exception constitutes a "firmly rooted" exception under *Roberts*. *See White v. Illinois*, 502 U.S. 346, 355 n.8 (1992). Accordingly, the Court should conclude that the Michigan Court of Appeals's decision was a reasonably application of clearly established Supreme Court law, and thus that petitioner is not entitled to relief on this claim.

### b. *Hearsay Statements of Jack Pizano*

A separate issue is presented by the hearsay statements of co-defendant Jack Pizano, which were a subset of the hearsay statements made by Magdalena Ortiz to the three witnesses who testified as to her hearsay statements. Specifically, these witnesses testified as to statements made by Magdalena Ortiz which in turn included the threatening statements made to her by Jack Pizano. These statements reflect the so-called "hearsay within hearsay" doctrine. Under this doctrine, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule[.]" MICH. R. EVID. 805; *accord* FED. R. EVID. 805. As petitioner correctly notes, the Michigan Court of Appeals did not separately analyze the admissibility against petitioner of Jack Pizano's threats to Magdalena Ortiz. Nevertheless, the Court should conclude that the admission of these statements did not violate

13

petitioner's confrontation rights.

Petitioner challenges the admission of Jack Pizano's threats on two bases. First, he contends that the threats were only admissible under the hearsay rules as a statement against penal interest, *see* MICH. R. EVID. 804(b)(3), and that the Supreme Court has held that this exception is not "firmly rooted" for purposes of the *Roberts* analysis. *See Lilly v. Virginia*, 527 U.S. 116, 137 (1999). While petitioner correctly characterizes the holding of *Lilly*, his assumption that the statements were admissible only under the statement against interest exception is incorrect. Indeed, a number of independent bases supports the admission of these statements consistent with the Confrontation Clause.

First, the statements were permissible under the Confrontation Clause because Jack Pizano's threats did not constitute hearsay at all. Under the rules of evidence, hearsay is an out-of court "statement" offered to prove the truth of the matter asserted. *See* FED. R. EVID. 801(c); MICH. R. EVID. 801(c). A "statement" is further defined as "(1) an oral or written assertion or (2) nonverbal conduct of a person if it is intended by the person as an assertion." FED. R. EVID. 801(a); MICH. R. EVID. 801(a). A threat, however, does not "assert" anything; rather, "threats are generally considered 'verbal acts' not admitted for the truth of the matter asserted." *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578 (E.D. Mich. 2004) (Tarnow, J.), *aff'd on other grounds*, 398 F.3d 783 (6th Cir. 2005); *see also*, *Tompkins v. Cyr*, 202 F.3d 770, 779 n.3 (5th Cir. 2000). In short, "[t]estimony about threats is not hearsay." *State v. Jalowiec*, 744 N.E.2d 163, 173 (Ohio 2001); *see also*, *United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness rather than for the truth of the matter asserted therein, are not hearsay."); *People v. Jones*, 228 Mich. App. 191, 205, 579 N.W.2d 82, 87-88, *modified and*

*remanded in part on other grounds*, 458 Mich. 862, 587 N.W.2d 637 (1998).  And, it is well-established that "[w]here statements are admissible because they are not hearsay, there is no confrontation clause problem."  *Martinez v. McCaughtry*, 951 F.2d 130, 133 (7th Cir. 1991); *see also*, *Anthony v. DeWitt*, 295 F.3d 554, 563 (6th Cir. 2002); *United States v. Williams*, 952 F.2d 1504, 1518 (6th Cir. 1991).

Further, even if Jack Pizano's threat did amount to hearsay, the statement falls within a firmly rooted hearsay exception.  First, it is likely that the threat, occurring during a heated argument with the victim, was an excited utterance under Rule 803(2).  *See Martinez*, 951 F.2d at 135.  In addition, the threat evidenced Jack Pizano's intent, and thus was admissible under the exception governing statements of a declarant's then existing mental condition, MICH. R. EVID. 803(3).  *See People v. Ortiz*, 249 Mich. App. 297, 307-11, 642 N.W.2d 417, 423-25 (2002); *see also*, *Commonwealth v. Stroyny*, 760 N.E.2d 1201, 1208-09 (Mass. 2002); *State v. Jaster*, 690 N.W.2d 213, 218 (N.D. 2004).   As the Michigan Court of Appeals observed in nearly identical circumstances: "The state of mind of [Jack Pizano] was relevant to his intent in killing the victims and therefore to the defendant's guilt as an aider and abettor.  A declaration of an existing state of mind is admissible as an exception to the hearsay rule."  *People v. Paintman*, 92 Mich. App. 412, 420, 285 N.W.2d 206, 210 (1979), *rev'd in part on other grounds*, 412 Mich. 518, 315 N.W.2d 418 (1982); *see also*, *State v. Davis*, 581 N.E.2d 1367, 1377 (Ohio 1991).  And, as with the excited utterance exception under Rule 803(2), the state of mind exception of Rule 803(3) is a firmly rooted exception under *Roberts*.  *See Horton v. Allen*, 370 F.3d 75, 84 (1st Cir. 2004); *Yucel v. Berghuis*, 86 Fed. Appx. 918, 919 (6th Cir. 2004); *Terronova v. Kincheloe*, 852 F.2d 424, 427 (9th Cir. 1988); *United States v. Johnson*, 354 F. Supp. 2d 939, 964 (N.D. Iowa 2005); *Frazier v. Mitchell*, 188 F.

15

Supp. 2d 798, 812-13 (N.D. Ohio 2001), *rev'd in part on other grounds sub nom. Frazier v. Huffman*, 343 F.3d 780 (6th Cir. 2003).[3]  Because Jack Pizano's threat was not hearsay, and even if hearsay was admissible under a firmly rooted hearsay exception, the Michigan Court of Appeals's decision was neither contrary to, nor an unreasonable application of, the Supreme Court's decision in *Roberts*.

Petitioner's second line of argument relies on the Court's decision in *Bruton v. United States*, 391 U.S. 123 (1968), which petitioner characterizes as holding that "since a defendant cannot require a co-defendant to waive his or her Fifth Amendment rights and submit to cross-examination as to an alleged out-of-court statement that incriminates both defendants, the defendant's Sixth Amendment right to confrontation is violated where the statement of the non-testifying co-defendant is introduced against the defendant."  Br. in Supp. of Pet., at 28.  However, petitioner's characterization extends *Bruton* far beyond its narrow holding, and is not supported by the Court's subsequent cases applying *Bruton*.

In *Bruton*, the Court "held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against

---

[3]It is irrelevant that the trial court did not rely on either the excited utterance or state of mind exception to admit this evidence.  *Roberts* is concerned with the reliability of hearsay statements, and nothing in *Roberts* suggests that reliability turns on the trial court's reason for admission.  Rather, reliability turns on the nature of the statement itself, *i.e.*, whether it "*falls within* a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66 (emphasis added).  *See Brown v. Tard*, 552 F. Supp. 1341, 1351-52 (D.N.J. 1982) (no Confrontation Clause problem where, although federal habeas court questioned whether trial court had properly admitted statement under spontaneous declaration exception, statement would have been admissible under state of mind exception); *State v. Pendelton*, 690 P.2d 959, 963-64 (Kan. Ct. App. 1984) (upholding under *Roberts* admission of evidence which was based on an exception which is not firmly rooted, where evidence could also have been admitted under a firmly rooted exception).

16

the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987) (discussing *Bruton*, 391 U.S. at 135-36). *Bruton* did not hold, however, that any statement by one co-defendant is automatically inadmissible against another co-defendant. There are two distinctions of constitutional significance between Jack Pizano's threat and the co-defendant confession at issue in *Bruton*.

First, in *Richardson* the Court limited the *Bruton* rule to those codefendant confessions that are "facially incriminating" and "expressly implicate" the defendant. *Richardson*, 481 U.S. at 208-09. "As *Richardson* made clear, the *Bruton* exception is a narrow one; it applies only to 'facially incriminating' confessions that by definition 'powerfully incriminat[e]' the defendant and that can be distinguished from statements that become incriminatory only when linked with other evidence introduced at trial." *United States v. Washington*, 952 F.2d 1402, 1405 (D.C. Cir. 1991) (quoting *Richardson*, 481 U.S. at 207-08 (quoting *Bruton*, 391 U.S. at 135)); *see also*, *Vincent v. Parke*, 942 F.2d 989, 991 (6th Cir. 1991). Here, Jack Pizano's threat to Magdalena Ortiz was not a confession which, on its face, incriminated petitioner. The threat did not mention petitioner nor implicate him in any way; indeed it was undisputed at trial that petitioner was not present when the threat was made. The threat was relevant only to show Jack Pizano's motive, which in turn was relevant to petitioner's motive. As *Richardson* makes clear, the introduction of this type of non-incriminating hearsay statement by a codefendant does not itself violate the *Bruton* rule. *See Vincent*, 942 F.2d at 991.

Second, unlike in this case, *Bruton* involved solely a "hearsay statement inculpating [the defendant which] was clearly inadmissible against him under traditional rules of evidence." *Bruton*, 391 U.S. at 128 n.3. The Court expressly declined to express an opinion as to whether "any recognized exception to the hearsay rule" would "necessarily raise questions under the

17

Confrontation Clause." *Id.* Despite this reservation of the issue in *Bruton*, in subsequent cases the "Supreme Court has indicated that, where the testimony in question does not constitute impermissible hearsay, permitting the statement to be admitted into evidence does not violate any right of confrontation under *Bruton*." *United States v. Ramos*, 861 F.2d 461, 468 (6th Cir. 1988); *see also*, *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998) ("*Bruton* has been limited to cases where the admission of the incriminating statements was not within a firmly rooted exception to the hearsay rule."). Thus, for example, in *Tennessee v. Street*, 471 U.S. 409 (1985), the Court found no constitutional error in permitting the prosecutor to use a codefendant's confession for a purpose other than to prove the truth of the matter asserted in the confession. The Court held that "[t]he *nonhearsay* aspect of [the codefendant's] confession . . . raises no Confrontation Clause concerns." *Id.* at 414. Similarly, although not specifically addressing *Bruton*, the Court in *Bourjaily v. United States*, 483 U.S. 171 (1987), held that the admission of a coconspirator's statement under the coconspirator exception to the hearsay rule raises no Confrontation Clause issues. *See id.* at 182-83.

Here, as discussed above, Jack Pizano's threat did not amount to hearsay at all, and even if it was hearsay it was admissible pursuant to a firmly rooted hearsay exception. Because of this, and because Jack Pizano's threat did not constitute a confession which facially incriminated petitioner, the decision of the Michigan Court of Appeals was neither contrary to, nor an unreasonable application of, the Court's decision in *Bruton*.

F.     *Conclusion*

In view of the foregoing, the Court should conclude that the decision of the Michigan Court of Appeals was not contrary to, nor did it involve an unreasonable application of, clearly established

18

federal law as determined by the Supreme Court.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives_____
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 12/1/05

<div style="border:2px solid black; padding:10px;">

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on December 1, 2005.

s/Eddrey Butts
Case Manager

</div>